THE STATE, WILLIAM H. GRIMES v. DAVID E. QUIMBY.

The people of the township of Hanover, in the county of Morris, with comparatively few exceptions, were prevented by the great storm, known as the "blizzard," from attending the township election of March 13th, 1888. An act was subsequently passed by the legislature authorizing a township election to be held where an election had not been held by reason of the said storm, and, under that act, an election was held in said township on the 10th of April, 1888. *Held,* that the persons who received the majority vote at the election of April 10th were the duly elected officers of the township.

On *quo warranto.* Rule to show cause.

Argued at February Term, 1889, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the relator, *John B. Vreeland* and *G. W. Jenkins.*

For the defendant, *Willard W. Cutler.*

The opinion of the court was delivered by

VAN SYCKEL, J. The facts in this case appear in the certificate of the trial judge as follows:

"The respective parties having, by their attorneys, waived a jury and consented to the trial of this cause without a jury, I, the undersigned, a justice of the Supreme Court, holding the Morris Circuit for the Term of January, A. D. 1889, have heard the respective allegations and proofs of the parties, and do now find the following facts to be established by proof, viz.:

"*First.* Both the relator and the defendant are, and for several years last past have been, residents of Hanover township, and were eligible to be elected to the office of chosen freeholder of said township on March 13th, 1888, and are still so eligible.

"*Second.* The township of Hanover had been, prior to 1888, legally divided into election districts, called the Northern and Southern election districts.

"*Third.* The polling place in the Southern election district was the school house in Whippany, and in the Northern district, the Cobb Hotel at Parsippany.

"*Fourth.* The town meeting in said township should have been held on March 13th, 1888 (the day of the great storm, known as the "blizzard"), for the election of township officers, including the office of chosen freeholder.

"*Fifth.* On the 13th day of March, 1888, Edwin S. Wilson, the judge of election; William P. Kitchell, one of the inspectors, and C. M. Kitchell, the clerk of election, were present at the polling place in the Southern election district at seven o'clock A. M., the latter having there the Hall & Wood patent ballot box, as required by law. On account of the storm no one appeared before nine o'clock, when one person appeared, and no one else appeared before eleven o'clock, when several persons came; an effort was then made to open the patent ballot box, but it could not be unlocked and opened, so the old ballot box theretofore used in that district was sent for; as soon as the old ballot box arrived H. C. Bleeker, a person duly qualified, was at once elected inspector by those present, and the election board so organized was duly sworn and opened the polls and began to receive votes about two o'clock, before which time no one voted. The board closed the polls at the hour required by law, and proceeded at once to canvass the votes cast and make out and sign a statement of the result, as required by law; the count of the votes showed that seventy-one votes had been polled in that district, of which number the relator received twenty-two, for the office of chosen freeholder, and the defendant received forty-nine for

said office; this statement was filed with the county clerk and set up in the township by William H. Van Winkle, who claimed to be elected township clerk at the election held that day (March 13th, 1888). One voter appeared at the polling place in the Southern district in the morning of March 13th for the purpose of voting, and, after waiting for over two hours, went away without having an opportunity of voting, and did not return. All others either waited and voted or returned and voted.

" *Sixth.* Said William H. Van Winkle, who claimed to be elected township clerk on said 13th day of March, and who had taken an oath of office before a justice of the peace of Morris township, obtained a rule from a justice of the Supreme Court, for Monroe Howell, the township clerk, to show by what warrant he claimed to have the office of township clerk, and why leave should not be granted to said Van Winkle to file an information in the nature of a *quo warranto*, and why said Howell should not appear and plead and demur thereto, which rule, after argument of counsel for each party, was, at the June Term of the Supreme Court, 1888, discharged; and the said Monroe Howell has continued to act as clerk of said township.

" *Seventh.* The polls in the Northern district were not opened at any time during the day of March 13th, the polling place itself was an unoccupied building and remained locked on account of the storm the entire day, and no election whatever was held in the Northern election district on that day.

"*Eighth.* At the organization of the newly elected board of chosen freeholders, held in May, 1888, the relator presented himself to be sworn in, but the clerk of the board refused to recognize him as the chosen freeholder of Hanover township.

"*Ninth.* The defendant has had possession of and has executed the office of chosen freeholder since that time, and still continues to hold and execute the same, having been recognized and sworn in by the clerk of the board.

"*Tenth.* That the township committee of Hanover township, on March 31st, 1888, held a meeting and (deciding that there had been a failure to hold a town meeting of March 13th) directed the township clerk to give notice, according to law, of a special town meeting, to be held April 10th, 1888 ; and that, on the 10th day of April, 1888, pursuant to such notice, an election was held in each of the said two election districts of Hanover township, such election being regularly conducted, in all respects, as required by law, the clerk having given legal notice thereof; that the number of votes received by William H. Grimes, for chosen freeholder, at the election of April 10th, was two hundred and eight, and the number received by David E. Quimby was six ; that the number of votes received by the relator in the Southern district, on March 13th, and in the Northern district, on April 10th, exceeded the number of votes received by the defendant for the office of chosen freeholder.

"And, being of opinion (in accordance with the opinion expressed by the ruling of the Supreme Court, in refusing leave to William H. Van Winkle to file an information in the nature of a *quo warranto* against Monroe Howell, respecting the office of township clerk in said township) that, upon said facts, said David E. Quimby was not elected to the office of chosen freeholder of the said county from the said township on March 13th, 1888 :

" I do thereupon find and determine, that said Quimby is guilty of intruding into and usurping, and has and as yet does intrude into and usurp, the said office in manner and form as charged in the pleading aforesaid.

" Dated January 25th, 1889.

" W. J. MAGIE,
"*Justice Supreme Court.*"

But at the same time the said justice granted the defendant a rule to show cause why a new trial shall not be granted.

The rule, as laid down in *McCrary on Elections*, § 448, is not controverted in this case. It is this : " If the opportunity to

vote is given to all alike, and if those who abstain from voting do so of their own fault or negligence, then those who attend and vote have the right to decide the result."

Nor is it contended, that there may not be some deviation from the hours fixed by law for keeping open the polls, without rendering the election void.

I regard this case as a conspicuously exceptional one. No authority has been cited under which it can be even plausibly maintained that there was an election in Hanover township on the 13th of March.

The division of the township into two election districts shows that there were over six hundred legal voters in the township.

The polls were not opened at all in the Northern district, and no one appeared there to vote.

In the Southern district the polls were not opened until two o'clock in the afternoon, and only seventy-one votes were polled there.

The failure to vote was not due to the neglect of the inhabitants to exercise their franchise, but was occasioned, as the trial judge found, by their inability to reach the polling place on account of the unprecedented severity of the snow storm which prevailed that day. There was clearly no expression of the popular will on the 13th of March. There was no opportunity to express it; there was an obstacle in the way of doing so which the voters could not surmount.

The rule which will support this as a legal election will apply with equal force if but five of the six hundred voters of the township, by the exercise of superior fortitude and endurance, had succeeded in reaching the polls.

In my judgment, Hanover was one of the townships in which, by reason of the storm, no election was held on the day fixed by law, and the election subsequently held in pursuance of the act of March 27th, 1888, was a legal and valid election.

The facts found show that Hanover was one of the townships to which the said last mentioned act was intended to

apply. If the people of the township had failed to avail themselves of the benefit of the law, a different question would be presented. In that event it might be, that a presumption of acquiescence in what was done on the 13th of March would arise against them, so far as to preclude their right to contest the election of those who had the majority vote on that day.

The rule to show cause should be discharged.